## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES BENTON, | : | Civil No. 3:21-cv-1136 |
| | : | |
| Plaintiff | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| M. MURTHA, *et al.*, | : | |
| | : | |
| Defendants | : | |

### MEMORANDUM

Plaintiff James Benton ("Benton"), an inmate housed at the State Correctional

Institution, Huntingdon, Pennsylvania ("SCI-Huntingdon"), commenced this action pursuant

to 42 U.S.C. § 1983. (Doc. 1). Named as Defendants are Librarian M. Murtha, former

Department Secretary J. Wetzel, former Superintendent K. Kauffman, Deputy

Superintendent Spyker, School Principal K. Laird, Chief Grievance Officer K. Moore,

Grievance Officer D. Varner, Grievance Coordinators C. Green, T. Walker, and A.

Wakefield, and Mail Supervisor K. Grassmyer. Presently before the Court is Defendants'

partial motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 18).

Benton failed to respond to the motion and the time for responding has now passed.[1]

---

[1] Benton was directed to file a brief in opposition to Defendants' motion and was admonished that failure to file an opposition brief would result in Defendants' motion being deemed unopposed. (Doc. 20) (citing M.D. PA. LOCAL RULE OF COURT 7.6).

Therefore, the motion is deemed unopposed and ripe for resolution. For the reasons set forth below, the Court will grant the motion.

## I.    Allegations of the Complaint

Benton alleges that, as a result of COVID-19 protocols and procedures, his access to the law library has been diminished, which violates his right of access to the courts. (Doc. 1). He contends that on March 20, 2020, the prison was placed on lockdown due to COVID-19 and the law library was closed. (*Id.* at p. 3). Once the lockdown was lifted, inmates were allowed in the law library for 45-60 minutes per week. (*Id.*).

Benton further contends that Defendants deprived him of his right to send and receive mail, and that his legal mail has been rejected on several occasions, in violation of his right of access to the courts. (*Id.* at pp. 2, 5). He asserts that he is pursuing relief in his state court criminal case pursuant to the Post Conviction Relief Act ("PCRA"). (*Id.* at pp. 3, 5).

Benton also alleges that mailroom staff retaliated against him by tampering with his outgoing grievance appeal. (*Id.* at p. 6).

## II.    Legal Standard

A complaint must be dismissed under Fed. R. Civ. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the

2

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] – that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks

omitted).  This "plausibility" determination will be a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court

must permit a curative amendment unless such an amendment would be inequitable or

futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a
> defendant moves to dismiss it, unless the district court finds that amendment
> would be inequitable or futile, the court must inform the plaintiff that he or she
> has leave to amend the complaint within a set period of time.

*Id.*

## III.   Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a cause of

action for violations of federal law by state officials.  *See* 42 U.S.C. § 1983.  The statute

provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom,
> or usage, of any State or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper proceeding for
> redress....

*Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95

F.3d 1199, 1204 (3d Cir. 1996).  To state a claim under § 1983, a plaintiff must allege "the

violation of a right secured by the Constitution and laws of the United States, and must

4

show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

## A.   Lack of Personal Involvement of Defendants Wetzel, Kauffman, Spyker, Laird, Moore, Varner, Green, Wakefield, Walker, and Grassmyer

Individual liability will be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). Liability "cannot be predicated solely on the operation of respondeat superior." *Id.* In other words, defendants in Section 1983 civil rights actions "must have personal involvement in the alleged wrongs . . . shown through allegations of personal direction or of actual knowledge and acquiescence." *Atkinson v. Taylor*, 316 F.3d 257, 271 (3d Cir. 2003); *Rode*, 845 F.2d at 1207-08. A plaintiff must establish the particulars of conduct, time, place, and the person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. When a plaintiff merely hypothesizes that an individual defendant may have had knowledge of, or personal involvement in, the deprivation of his or her rights, individual liability will not follow. *Atkinson*, 316 F.3d at 271; *Rode*, 845 F.2d at 1207-08. A claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred. *See Rode*, 845 F.2d at 1207.

It appears that Benton seeks to hold Defendants Wetzel, Kauffman, Spyker, Laird, and Grassmyer liable based upon their respective supervisory positions. In a conclusory

fashion, Benton states that Defendants Wetzel, Kauffman, Spyker, and Laird "have failed to supervise the realization of [his] rights by ignoring/denying [his] requests for relief" and have "neglected to ensure [him] access to the courts through the use of law library." (Doc. 1, p. 5). Benton also alleges that Defendant Grassmyer "supervised the illegal/unlawful rejection of [his] mail in the mailroom." (*Id.* at p. 6). Supervisors, however, "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676. With respect to these Defendants' supervisory roles, "there are two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quotation and alteration marks omitted). Completely absent from the complaint are allegations that these Defendants established and maintained a policy, practice or custom which directly caused the constitutional harm, or that they participated in violating Benton's rights, directed others to violate them, or acquiesced in any unconstitutional conduct by their subordinates.

It also appears that Benton seeks to hold Defendants Moore, Varner, Green, Wakefield, and Walker liable based upon their responses to his grievances. (Doc. 1, pp. 5-6). However, the "failure of a prison official to provide a favorable response to an inmate

6

grievance is not a federal constitutional violation." *Flanagan v. Shively*, 783 F. Supp. 922, 931-32 (M.D. Pa. 1992), *aff'd*, 980 F.2d 722 (3d Cir. 1992). Thus, insofar as Benton's claims against Defendant Defendants Moore, Varner, Green, Wakefield, and Walker are premised on their responses to his grievances, dissatisfaction with a response to an inmate's grievance does not support a constitutional claim. *See Brooks v. Beard*, 167 F. App'x. 923, 925 (3d Cir. 2006) (holding that allegations that prison officials responded inappropriately to an inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying constitutional deprivation); *Alexander v. Gennarini*, 144 F. App'x 924 (3d Cir. 2005) (concluding that involvement in the post-incident grievance process is not a basis for liability).

Based on the above, Defendants' motion to dismiss the claims against Defendants Wetzel, Kauffman, Spyker, Laird, Moore, Varner, Green, Wakefield, Walker, and Grassmyer will be granted based on lack of personal involvement.

### B.   First Amendment Access to Courts Claim

In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's limited right of access to the courts. Prisoners are not necessarily "capable of filing everything" but have a right of access to "attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Lewis v. Casey*, 518 U.S. 343, 355 (1996). "The right of access to the courts must be adequate, effective and meaningful and must be freely exercisable without hindrance or fear of retaliation." *Milhouse v.*

*Carlson*, 652 F.2d 371, 374 (3d Cir. 1981) (internal citations omitted).  Following *Lewis*,

courts have consistently recognized that such claims require some proof of an actual,

concrete injury, in the form of direct prejudice to the plaintiff in the pursuit of some legal

claim.  *See Oliver v. Fauver*, 118 F.3d 175 (3d Cir. 1997).  An inmate must demonstrate "(1)

that they suffered an actual injury—that they lost a chance to pursue a non-frivolous or

arguable underlying claim; and (2) that they have no other remedy that may be awarded as

recompense for the lost claim other than in the present denial of access suit." *Monroe v.*

*Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (quoting *Christopher v. Harbury*, 536 U.S. 403, 415

(2002)) (internal quotations omitted).

Benton asserts that Defendants denied him access to the courts by providing limited

access to the law library and rejecting his legal mail.  (Doc. 1, pp. 2-3, 5-6).  He claims that

inmates are only permitted in the law library for 45-60 minutes per week as a result of

COVID-19 restrictions and that he has been taken off the law library schedule.  (*Id.*).  He

further claims that his legal mail related to a PCRA petition was "rejected."  (*Id.* at p. 5).

Benton has not asserted that his limited access to the law library or the rejection of his legal

mail has prevented him from pursuing a nonfrivolous legal claim or defense, or that he

actually missed any deadlines in a pending case.  Moreover, Benton has failed to oppose

Defendants' motion to dismiss, and he presents no argument in support of any actual injury.

In failing to establish actual injury or some legal loss, Benton fails to demonstrate that

Defendants' conduct imposed a substantial impact on him.  *See Monroe*, 536 F.3d at 205-

8

06 (stating that the complainant in an access to the courts claim "must describe the underlying arguable claim well enough to show that it is 'more than mere hope', and it must describe the 'lost remedy'") (citation omitted).  Consequently, the Court will dismiss Benton's denial of access to the courts claim.

### C.   First Amendment Retaliation Claim

Benton alleges that Defendants retaliated against him when the mailroom tampered with an outgoing grievance appeal.  To prevail on a retaliation claim, Benton must demonstrate that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take the adverse action.  *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (citing *Rauser v. Horn*, 241 F.3d 330, 333-34 (3d Cir. 2001)).  An "adverse action" is one that would "deter a person of ordinary firmness" from exercising his First Amendment rights.  *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)).  Retaliatory motive can be inferred from either: (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action; or (2) a pattern of antagonism coupled with timing that suggests a causal link.  *Id.* (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the

9

two events. *See Lape v. Pennsylvania*, 157 F. App'x 491, 498 (3d Cir. 2005)

(nonprecedential). Only when the facts of a particular case are "unusually suggestive" of a

retaliatory motive will temporal proximity, on its own, support an inference of causation. *See*

*Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997). The Third Circuit has noted

that an inmate can satisfy this burden "with evidence of either (1) an unusually suggestive

temporal proximity between the protected activity and the allegedly retaliatory action or (2) a

pattern of antagonism coupled with timing that suggests a causal link." *Watson v. Rozum*,

834 F.3d 417, 422 (3d Cir. 2002).

     Once a plaintiff has established that he was subjected to a retaliatory disciplinary

measure, the burden shifts to the defendants to demonstrate by a preponderance of the

evidence that "they would have made the same decision absent the protected conduct for

reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at

334. "This is often referred to as the 'same decision defense.'" *Watson*, 834 F.3d at 422. If

the prison officials can make this showing, it defeats the retaliation claim. *See Carter v.*

*McGrady*, 292 F.3d 152, 159 (3d Cir. 2002).

     As to the first element, Benton satisfies the first prong of the *Rauser* test by alleging

that he was engaged in constitutionally protected activity—the exercise of his right under the

First Amendment to file grievances. *See Watson*, 834 F.3d at 422-23.

     In analyzing the second element of *Rauser*, Benton must show that there was an

adverse action by prison officials sufficient to deter a person of ordinary firmness from

exercising his constitutional rights.  *Rauser*, 241 F.3d at 333.  In accepting as true all factual allegations set forth in the complaint, Benton meets the second *Rauser* element by asserting that Defendants tampered with his outgoing grievance appeal.

The third *Rauser* prong requires a prisoner to prove that his constitutionally protected conduct was a substantial or motivating factor in the adverse action.  Despite a liberal review of the complaint, it is apparent that Benton's participation in constitutionally protected conduct was not a substantial or motivating factor in the mailroom's alleged tampering with his legal mail.  Benton has failed to allege any facts that the alleged tampering with his outgoing grievance appeal was linked to the exercise of his constitutional rights.  Because Benton has failed to allege a sufficient causal connection, Defendants' motion to dismiss the retaliation claim will be granted.

## IV.   **Leave to Amend**

When a complaint fails to present a prima facie case of liability, district courts must generally grant leave to amend before dismissing the complaint.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000).  Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile."  *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)).  The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to

facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted).  Benton's claims are factually and legally flawed; thus, the Court concludes that granting leave to amend would be futile.

## V.   **Conclusion**

For the reasons set forth above, the Court will grant Defendants' partial motion (Doc. 18) to dismiss.  A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: May ___, 2022